DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 8182. Department Two. June 10, 1910.]

SKAGIT COUNTY, *Respondent*, v. AMERICAN BONDING
COMPANY OF BALTIMORE, *Appellant*, ALLEN
BLUMBERG, *as Administratrix,*
*Defendant.*[1]

LIMITATION OF ACTIONS—OFFICIAL BONDS—ACCRUAL OF ACTIONS.
The statute of limitations applicable to an action on the official
bond of a county officer, for various defalcations and misappropria-
tions of funds which were not known to the county during his term
of office, does not begin to run as against the county until the ex-
piration of the term of office for which the bond was given.

SAME—ACTION FOR FRAUD—DISCOVERY. Subdivision 4 of Rem. &
Bal. Code, § 159, providing that a cause of action for fraud does not
accrue until the fraud is discovered, applies to actions on the official
bond of a county officer for embezzlement of funds, under a strict
construction of said section.

COUNTIES—OFFICERS—OFFICIAL BONDS — BREACH— VIOLATION OF
DUTY. A compensated surety on the official bond of a county auditor
cannot make the defense that the auditor's receipt and conversion of
license fees properly payable to the treasurer, his issuance of illegal
warrants, and his forgeries by the raising of warrants, were merely
private acts and not official acts constituting a breach of his bond,
where they were breaches of his official duty as auditor and could
not have been successfully perpetrated as a private citizen.

Appeal from a judgment of the superior court for Skagit
county, Joiner, J., entered March 8, 1909, upon findings in
favor of the plaintiff, in an action upon an official bond, after

[1]Reported in 109 Pac. 197.

a trial on the merits before the court without a jury. Affirmed.

*Blattner & Heasty* and *L. B. da Ponte,* for appellant.

*Augustus Brawley,* for respondent.

CROW, J.—Fred Blumberg, now deceased, was elected auditor of Skagit county in November, 1902, and on December 20, 1902, he, as principal, and the American Bonding Company of Baltimore, Maryland, a corporation, as surety, executed and delivered to Skagit county an official bond in the sum of $10,000, containing the following condition:

"The condition of the above obligation is such that whereas the above bounden Fred Blumberg was on the 4th day of November, 1902, duly elected to the office of County Auditor in and for Skagit county, State of Washington:

"Now therefore, if the said Fred Blumberg shall well and truly perform all of the duties required of him by law as county auditor of Skagit county, Washington, aforesaid, and shall faithfully discharge all duties which may be required of him by any law enacted subsequent to the execution of this bond, then this obligation shall be void, otherwise to remain in full force and effect."

Blumberg took possession of his office, entered upon its duties, and served as auditor for the full term ending in January, 1905. This is an action upon his official bond against the bonding company, and Allen Blumberg, as administratrix of his estate, to recover for his defalcations and embezzlements. Upon findings made, a final judgment for $7,756.19 was entered in favor of the county. The bonding company has appealed.

The numerous items included in this judgment may be classified as follows: (1) Fees collected and not accounted for; (2) warrants fraudulently issued without authority or consideration, and paid by the county; (3) warrants raised by Blumberg after their authorized issue, and paid by the county; (4) a liquor license fee paid by one Nixon and appropriated by Blumberg to his own use.

Many of Blumberg's alleged acts of misconduct were committed more than three years prior to the commencement of this action. The evidence shows that he was reelected in 1904; that he served a second term which expired in January, 1907; that immediately thereafter his books were experted, when his various wrongful acts were discovered, and that at no prior time did the respondent have any actual knowledge thereof. This action was commenced on June 14, 1907. The appellant contends that the auditor's books at all times afforded evidence of his defalcations, embezzlements, and other fraudulent acts; that the respondent had ample facilities for discovering the facts; that its failure to do so resulted solely from its own negligence; and that the causes of action pleaded in the complaint, in so far as they are predicated upon Blumberg's acts committed more than three years prior to the commencement of this action, are barred under subdivision 3, § 159, Rem. & Bal. Code. In support of these contentions appellant cites *Spokane County v. Prescott,* 19 Wash. 418, 53 Pac. 661, 67 Am. St. 733. In that case it became the statutory duty of Prescott, on the expiration of his term of office as treasurer, to turn over to his successor all moneys of Spokane county with which he was then charged. The exact time for the performance of that duty was fixed by law, as occurring at the expiration of his term. He failed to perform that duty. The cause of action then accrued, and this court held that the three-year statute was applicable; that it then began to run, and that the cause of action was barred.

Blumberg's first term expired in January, 1905. When he entered upon his second term he gave a new bond, and again qualified as auditor. The two terms were separate and distinct. It might well be held that, as to all causes of action based upon wrongful acts occurring during his first term, the statute of limitations began to run at its expiration in January, 1905. A county official might be guilty of numerous distinct acts of embezzlement or misappropriation of

funds during his term of office, but it would be impractical to hold that the statute would run as to each wrongful act from the date of its commission, simply because it might have been then discovered by an expert examination of his books. It should rather be held that, for the purposes of the statute of limitations, all causes of action matured at the expiration of his term, for defalcations during such term, without reference to the several dates on which they occurred, and that as between the county on the one part, and the delinquent officer on the other, the period of limitation would not commence to run prior to the expiration of his term. The construction of the statute adopted by this court in the *Prescott* case was a liberal one in favor of the defaulting officer. We do not desire to extend the doctrine there announced by any more liberal construction in favor of the appellant here. Blumberg's wrongful acts were committed while he was in complete possession of his office, and was afforded an opportunity for dishonest and fraudulent acts, of which, as an unfaithful officer, he availed himself to respondent's injury. To now hold that the statute of limitations began to run as against each act, from the date of its commission, instead of the expiration of his term, would result in making it more difficult to hold a defaulting officer or recover from his bondsmen, especially where, as in this case, he was reelected and served a second term, before his delinquencies were actually discovered. We feel constrained to hold that the causes of action matured with reference to the statute of limitations, at the expiration of the term of office.

There is nothing here to disclose when many of Blumberg's embezzlements actually occurred, although the dates of others are shown. Appellant contends that, because Blumberg should have turned over all moneys received by him as soon as collected, he at once became a defaulter, and that the causes of action immediately accrued so as to start the running of the statute. The difficulty with this contention is that none of the defalcations were actually discovered by

respondent until February, 1907. Blumberg neither desired nor intended that his acts should become known if he could avoid it, nor was he disposed to lend aid to their discovery. Action was promptly commenced by the respondent after discovery. If the strict construction for which the appellant contends should be adopted as to subdivision 3 of § 159, Rem. & Bal. Code, then the contention of respondent, predicated upon subdivision 4 of the same section, to the effect that the cause of action originated in fraudulent acts of Blumberg, that it cannot be held to have accrued until discovery of the facts by respondent, and that the action was commenced in time, would necessarily have to be sustained. In any event the action was commenced in time as to all items claimed.

Appellant has excepted to a number of the findings made by the trial judge. Without discussing the evidence, which is largely documentary, we conclude that they must be approved, and that they sustain the final judgment. Further contention is made to the effect that, even on the findings made, the appellant is not liable as surety for Blumberg; that the wrongful acts alleged, proven, and found, were not of such a character as to constitute any violation of Blumberg's official duties; or rather that they were not official acts, but were acts which he performed as an individual in his capacity as a private citizen. It appeared that on June 4, 1903, Blumberg presented to the board of county commissioners the application of one Frank Nixon, for a retail liquor license, accompanied by a written receipt of the county treasurer dated May 19, 1903, for $300, the cost of the license; that the license was thereupon issued; that Nixon had paid the money to Blumberg instead of the county treasurer; that Blumberg appropriated it to his own use; that he wrongfully and fraudulently changed the date of a previous receipt given by the treasurer for a former liquor license, and presented it to the commissioners with the application of Nixon made in 1903, thus procuring the license; that the money

actually paid by Nixon was never received by the county, although the license was issued.

It further appears that Blumberg issued many warrants on road funds and other funds of Skagit county to various persons therein named; that he indorsed the names of the payees thereon by himself as county auditor; that they were paid by the county treasurer; that no county indebtedness existed as a consideration for such warrants, and that they were never authorized by the board of county commissioners. It further appeared that in many instances warrants were lawfully issued for indebtedness actually due from the county to the payee; that Blumberg procured the indorsement of these warrants by paying their face value to the holder; that he thereafter raised them so that they called for larger sums than when originally issued, and that the warrants as thus raised were paid by the county. The appellant now contends that these various acts were not done by Blumberg as county auditor; that when Nixon paid the $300 to Blumberg instead of making payment to the treasurer, he, Nixon, constituted Blumberg his agent to pay the treasurer; that Nixon, therefore, has never paid the license fee to the county, and that respondent's claim is against him instead of Blumberg.

Appellant further claims that the fraudulent and unauthorized issue of the warrants without consideration was not the act of Blumberg as county auditor, and that when he raised the other warrants he had in fact purchased them in his individual capacity, and that his acts in so raising them were not official acts, but forgeries. There is no question but that the various acts performed by Blumberg of which the respondent now complains were unauthorized; that they were not contemplated as a part of his official duties, and that they were illegally performed for his personal and private benefit. The appellant, however, executed a bond on his behalf, to secure the faithful performance of his duties as county auditor in every respect. The acts complained of were a violation of his duties as county auditor. Had he been a private

citizen not holding any official position he could not have successfully perpetrated any of the frauds charged in the complaint.  The fact that he was county auditor, had possession of the records of the office, the blanks upon which warrants were to be issued, the receipt the date of which was raised, and the other documents which he used in perpetrating these frauds, enabled him to perform acts of embezzlement, misappropriation, and dishonesty which he could not have performed as a private citizen.  By executing a bond upon his behalf, the appellant contracted that he would be a faithful, honest, and efficient officer, and that he would conscientiously discharge all the duties devolving upon him.  The duty devolved upon him not to make use of any of these blanks, books, records, or documents for the purpose of perpetrating a fraud and benefiting himself.  Although it is contended with much force that these were not strictly official acts, they were nevertheless wrongful, dishonest, and unfaithful acts which he performed while county auditor, which he could not have performed without being auditor, and which have resulted in great financial loss to the respondent.  We think, therefore, that no technical or specious arguments to avoid liability on the part of the appellant, a compensated surety, should be given any serious consideration, when such arguments are based solely upon the contention that acts such as these were not performed by Blumberg as auditor.

The judgment is affirmed.

RUDKIN, C. J., DUNBAR, PARKER, and MOUNT, JJ., concur.