[No. 12746. Department One. January 28, 1916.]

MARSHALL-WELLS HARDWARE COMPANY, *Appellant*, v. TITLE
GUARANTY & SURETY COMPANY, *Respondent*.[1]

LIMITATION OF ACTIONS—TOLLING STATUTES—INJUNCTION TO PRE-
VENT SUITS—APPEARANCE—PROCEEDINGS—EFFECT ON STAY—STATUTES.
Where an action was brought in the Federal court by the surety in
the bond of a public contractor, to enjoin a multiplicity of suits on
the bond and the transfer of funds by state officers, until the claims
against the bond could all be established in one action, which claims
the surety confessed a willingness to pay, and in which action the
claimants appeared to prove their claims, but no injunction was is-
sued, and the suit was finally dismissed as to all claimants whose
claims against the bond were less than $2,000, the Federal suit does
not operate to toll the statute of limitations against actions on the
bond, under Rem. & Bal. Code, §§ 172, and 173, providing that, if an
action is stayed by injunction, the time of the continuance of the
injunction shall not be a part of the time limited, and that, if an
action shall be commenced within the time prescribed therefor and
judgment for plaintiff be reversed on appeal, the plaintiff may com-
mence a new action within one year thereafter; since no injunction
was issued and there was no appeal from or reversal of the decree of
the Federal court.

SAME—TOLLING STATUTES — AGREEMENT — CONDITIONS. In such a
case, the surety company is not equitably estopped to set up the
three-year statute of limitations against subsequent actions on the
bond by the fact that, in the Federal suit, it agreed that, if the claim-
ants would enter an appearance in the Federal court, the claims
would be paid as soon as properly established as true claims against
the bond; since a promise to toll the statute of limitations must be
clear, definite, and unconditional; and the promise was upon the
condition of establishing the claims, which condition was not per-
formed.

SAME — TOLLING STATUTE — AGREEMENT — ELECTION OF REMEDIES.
The voluntary appearance of the claimants in the Federal suit to
avoid an injunction against their prosecution of suits on the bond
in the state court, and in reliance on the establishment of their claims
in the Federal suit, was an election of remedies, and not a waiver of
the statute of limitations by the surety, in the absence of an ex-
press agreement to that effect.

[1]Reported in 154 Pac. 801.

Appeal from a judgment of the superior court for King county, Humphries, J., entered February 27, 1915, upon sustaining a demurrer to the complaint, dismissing an action on contract. Affirmed.

*Cassius E. Gates*, for appellant.

*James B. Murphy* and *Williamson, Williamson & Freeman*, for respondent.

MOUNT, J.—The trial court sustained a demurrer to the plaintiff's complaint. The plaintiff elected to stand upon the allegations thereof and the action was dismissed. This appeal followed.

The complaint alleges, in substance, that, in July, 1910, W. F. Guernsey & Company entered into a contract with the state highway commission for the construction of a state aid road in King county; that, in accordance with the provisions of Rem. & Bal. Code, § 1159 (P. C. 309, § 93), W. F. Guernsey & Company executed and filed a bond on which the defendant in this action is surety; that thereafter, between August 8 and September 27, 1910, the plaintiff furnished culvert pipe of the value of $1,478.27, which culvert pipe was used in the work; that a claim was filed against the bond on June 9, 1911; that the work was accepted by the highway commission on September 3, 1911. The complaint also sets out a copy of the bond, which is a joint and several bond. This action was brought against the bonding company alone. The complaint was filed and served on June 16, 1914.

It is conceded by the appellant that the action is barred by the three-year statute of limitation, unless the further facts pleaded in the complaint have suspended the operation of the statute. The allegations of the complaint upon that question are as follows:

"That heretofore, and in the month of September, 1911, the defendant herein instituted suit in the United States

District Court for the western district of Washington, northern division, entitled Title Guaranty & Surety Company, a corporation, complainant, vs. W. F. Guernsey, *et al.*, defendants, No. 2022, and in April, 1912, filed an amended complaint alleging *inter alia* as follows: That said W. F. Guernsey & Company had entered into a contract with the state of Washington as alleged in this complaint, and that pursuant to said contract, said W. F. Guernsey & Company had entered upon the work of performing the same, and had in fact, completed the work, and that said work had been accepted by the state; that the said complainant had executed a bond in behalf of said W. F. Guernsey & Company, to secure the faithful performance of said work; that said bond was duly accepted and filed; that said W. F. Guernsey & Company had not at the time of the completion of said work under said contract, sufficient property or assets from which any claim of the complainant might have against it, could satisfy, and had not sufficient property subject to execution in said district or in the state of Washington, or elsewhere, and that said company was wholly unable to respond in damages sufficient to reimburse complainant for any sums for which it might be liable under said bond; that many claims had been filed with the state highway commissioner against said bond, and many of said claims were for less than the sum of two thousand dollars, and not appealable to the supreme court of the state of Washington; that a uniform holding might not be obtained in each case and that since the commencement of said action in the Federal court, certain of the claimants brought suit upon said bond, some in a court of one county, and some in the court of another; that many of them were threatening to bring suit in the justice court and the superior court, upon claims not appealable to the supreme court; that some of said suits were prosecuted against the surety alone and the court refused to require the principals upon said bond to be joined; that said complainant believed that if the said claimants were not restrained therefrom, a multiplicity of suits would be instituted in different courts entertaining different opinions as to the construction of said statute regarding suits upon bonds of this character, and that the only way in which uniform rulings could be had upon all of said claims, was a suit in equity such as the complainant filed at that time; that said complainant stood ready

and willing at all times, to pay any and all claims, and fully perform the covenants of its bond as soon as and whenever said claims were properly established as true claims against said bond; that the defendants in said action, the state highway commissioner of the state of Washington, the state treasurer of the state of Washington, the state auditor of the state of Washington, the county treasurer and county auditor of King county, had in their possession certain funds which they were threatening to turn over to the Scandinavian-American Bank of Tacoma, and claimed said funds by virtue of a purported assignment thereof from said W. F. Guernsey & Company.

"That in said action the said complainant therein, which is the defendant in this action, prayed the court for an injunction restraining and enjoining said state and county officials from transferring any funds in their possession, which said injunction was entered in said action on October 9th, 1914, and in said action said complainant prayed for an injunction against all the defendants therein, including the plaintiff in this action, restraining them from instituting or prosecuting any other suit upon said bond. That the undersigned attorney for plaintiff in this action was advised of the filing of said complaint, and was threatening to file suit in the superior court against said bonding company, but at the request of James B. Murphy, counsel and attorney in fact for said Title Guaranty and Surety Company, filed in said action, an appearance in order to eliminate the necessity of having a restraining order served upon this plaintiff; that said appearance was entered relying upon the allegations contained in said complaint and relying particularly upon the allegation therein to the effect that said bonding company, defendant herein, would pay any and all claims as soon as said claims should be properly established as true claims against said bond. That a large number of the other defendants in said action who had furnished materials and labor for use in the construction of the work under said contract, also filed appearances and cross-complaints in said action; that this plaintiff endeavored at numerous times, to have said case set down for trial but that it was delayed and did not come on for trial until the 14th of May, 1914. That the said defendants who furnished material and labor aforesaid, introduced evidence in support of their respective claims, and that this

plaintiff proved that the material alleged in this complaint
to have been furnished, was actually used in the construction
of said road, and was a valid claim against said bond. That
after all the evidence in said case was introduced, the court
in that action, upon motion of the alleged assignee of said
W. F. Guernsey & Company, dismissed said action as to all
cross-complainants whose claims were less in amount than two
thousand dollars ($2,000). That although said motion was
filed in the name of said assignee, it was in truth and in fact
made at the request and for the benefit of the defendant in this
action.

"That plaintiff alleges that said action was instituted, and
the delay of the trial thereof, caused by defendant herein for
the sole purpose of defeating the claim of this plaintiff and
others similarly situated, and that the defendant herein is
threatening to plead the statute of limitations as against
the claim of this plaintiff on the ground that more than three
years have expired since the materials used in the construc-
tion of said road were delivered; that the plaintiff herein has
at all times acted in good faith and would not have appeared
in said action in the Federal court except for the fact that
an injunction had been prayed for in said suit, and that its
appearance therein would tend to avoid a multiplicity of
suits, and except for the further fact that plaintiff in that
action asserted its willingness and promised therein to pay
all claims as soon as they should be properly established as
true claims against said bond.

"That defendant in this action has by its acts, words and
conduct aforesaid, estopped itself from pleading the statute
of limitations in this action, and that said defense is not
available to the said defendant at this time; that said de-
fendant is preparing to plead the statute of limitations as a
defense and should be enjoined from so doing."

The question presented upon this appeal is whether these
allegations are sufficient to estop the defendant from raising
the question of the statute of limitations. The statute, at
§ 172, Rem. & Bal. Code (P. C. 81 § 89), provides:

"When the commencement of an action is stayed by in-
junction or a statutory prohibition, the time of the continu-
ance of the injunction or prohibition shall not be a part of
the time limited for the commencement of the action."

Section 173, Rem. & Bal. Code (P. C. 81 § 91), provides:

"If an action shall be commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on error or appeal, the plaintiff  .  .  .  may commence a new action within one year after reversal."

It is plain, we think, that these provisions of the statute are not applicable to this case, for the reason that no injunction or statutory prohibition is alleged in the complaint. It is not alleged or claimed that the action in the Federal court has been reversed. So that it is plain that these provisions of the statute are not applicable to the present action.

It is argued at some length by the appellant that the facts above pleaded constitute an equitable estoppel against the defendant from raising the statute of limitations. It is no doubt the rule that, where a fraud, or circumstances amounting to a fraud, prevents a party from maintaining an action against another, the equitable rule of estoppel will apply. The authorities are abundant to that effect. This court has held in *Kreielsheimer v. Gill*, 85 Wash. 175, 147 Pac. 871, that, where a promise is made to pay as soon as a suit against a person secondarily liable is over, regardless of the outcome of that suit, and a creditor was thereby induced to delay the enforcement of his claim, an equitable estoppel would follow. But we think that case does not control here, by reason of the fact that in that case there was an absolute promise to pay. And furthermore, the account in that case was, by the act and solicitation of the payor, put beyond the control of the creditor for the time being, and the suit was still pending thereon. The rule is plain that, where there is a promise to pay, before it will toll the running of the statute of limitations, the promise must be certain, definite, and unconditional. *Liberman v. Gurensky*, 27 Wash. 410, 67 Pac. 998; *Bank of Montreal v. Guse*, 51 Wash. 365, 98 Pac. 1127; *Thisler v. Stephenson*, 54 Wash. 605, 103 Pac. 987; *Coe v. Rosene*, 66 Wash. 73, 118 Pac. 881, Ann. Cas. 1913 C. 741, 38 L. R. A. (N. S.) 577.

The promise alleged in this case, as stated in the complaint above quoted, was that, if the plaintiff in this case would enter an appearance in the Federal court, the claim of the plaintiff would be paid "as soon as said claims should be properly established as true claims against said bond." This was clearly a conditional promise to pay and meant, of course, that, if the plaintiff in this case would make an appearance in that case, and properly establish his claim against the bond, the claim would be paid. The only way the claim could be established in that case was by a judgment of the court. It is true it is alleged in the complaint that the plaintiff in this case "proved that the material alleged in this complaint to have been furnished was actually used in the construction of said road and was a valid claim against said bond." It is then alleged, "that after all the evidence in said case was introduced, the court in that action, upon motion of the alleged assignee of said W. F. Guernsey & Company, dismissed said action as to all cross-complainants whose claims were less in amount than $2,000." So it is clear there is no allegation that the claims of the appellant were allowed in that case; but the fact is, as stated in the complaint, that the claims were not allowed, and as to the appellant, the action was dismissed.

The complaint above quoted also alleges that, in the case in the Federal court, an injunction was sought, and that this plaintiff, in order to avoid the issuance of an injunction, entered an appearance in that case. It is apparent that the appellant was not compelled to enter an appearance in that case. It could do so or not as it saw fit. No injunction was issued against the appellant. If an injunction had been issued, then clearly, under the terms of the statute above referred to, the statute of limitations would not run pending that injunction. The plaintiff, therefore, voluntarily entered its appearance relying, as it says, upon establishing its claim as a true claim against said bond in that court. In other words, the appellant elected its remedy in the Federal court

instead of maintaining an action in the state court.   In electing that remedy, the statute ran against the claim in the state court.   *Hinchman v. Anderson*, 32 Wash. 198, 72 Pac. 1018; *Hanna v. Kasson*, 26 Wash. 568, 67 Pac. 271.

It is stated in the complaint in this case that an injunction was entered in the Federal court on October 9, 1914.   That injunction, according to the allegations of the complaint, ran only against state officers mentioned in the complaint in the Federal court, and was not effective against this appellant. It is not claimed, as we understand, that any injunction was issued against this appellant in the Federal court.   It entered that court voluntarily.   It was not required to remain there, but could, at any time, have been dismissed therefrom, and could have brought an action in the state court.   This fact distinguishes this case from the case of *Kreielsheimer v. Gill*, *supra*.   Clearly there is no agreement to waive the statute of limitations alleged in the complaint in this action.   The only agreement attempted to be alleged is that the plaintiff, in the Federal court, promised this appellant that if it would make an appearance in the Federal court, and there properly establish as true its claim against the bond, then this appellant would be paid.   There was evidently no thought in this promise to waive the statute of limitations.   It has been held that the statute of limitations will run unless waived by an agreement expressly or clearly to be implied.   *McKay v. McCarthy*, 146 Iowa 546, 123 N. W. 755, 34 L. R. A. (N. S.) 911.

In *Monroe v. Herrington*, 110 Mo. App. 509, 85 S. W. 1002, it was said:

"In order to prevent the defense of the statute of limitations by estoppel or waiver, there must have been a distinct agreement by the party sued not to interpose the defense. Mere reliance on the debtor's promise to pay if not sued, affords no ground for cutting him off from the defense when sued. (*Hill v. Hilliard*, 103 N. C. 34; *Joyner v. Massey*, 97 Mo. 148; *Bank v. Hill*, 10 Humph. (Tenn.) 176, 51 Am. Dec. 698; *Andre v. Redfield*, *supra*, [98 U. S. 255])."

We are satisfied, therefore, from the allegations of the complaint above set out, that there was no agreement to waive the statute and no fraud, and no ground for equitable estoppel. The trial court was right in sustaining the demurrer.

The judgment appealed from is therefore affirmed.

MORRIS, C. J., ELLIS, and FULLERTON, JJ., concur.